IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| BRENDA L. MORGAN, individually and as Personal Representative of the Estate of Thomas Henry Morgan, Sr., Deceased, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Case No._____ |
| NORTH MISSISSIPPI MEDICAL CENTER, INC., a Delaware Corporation | * | JURY TRIAL DEMANDED |
| | * | |
| Defendant. | * | |
| | * | |

## COMPLAINT

COMES NOW the Plaintiff, Brenda L. Morgan, individually and as Personal Representative of the Estate of Thomas Henry Morgan, Sr., deceased, and files this her Complaint showing unto the Court as follows:

1.  Brenda L. Morgan (hereinafter referred to as "Mrs. Morgan") is an individual resident of the State of Alabama and is the authorized Personal Representative of the Estate of Thomas Henry Morgan, Sr., deceased.

2.  Defendant North Mississippi Medical Center, Inc. (hereinafter referred to as "Hospital") is a Delaware corporation with a principal place of business in Tupelo, Mississippi, which at all material times owned, operated and managed an acute care hospital providing emergency medical services to members of the general public, such as Thomas Henry Morgan, Sr., deceased (hereinafter referred to as "Mr. Morgan").

3. Plaintiff brings this action under the Emergency Medical Treatment and Active Labor Act (42 U.S.C.A. §3395dd).  This Court has jurisdiction of this cause under 28 U.S.C.A §1331.

4. On or about Friday, August 22, 2003, Mr. Morgan suffered severe medical injury resulting from a fall from a tree stand at his hunting camp near Calhoun City, Mississippi.  Mr. Morgan suffered from an emergency medical condition consisting of multiple rib fractures, vertebrae fractures, a dislocated shoulder and pulmonary contusion.  Mrs. Morgan, his wife, was notified of the injury.

5. Mr. Morgan was admitted to the emergency department of the Hospital for emergency trauma care.  Mr. Morgan was uninsured for medical expenses.  Immediately following her arrival at the Hospital on Saturday morning, August 23, 2003, Mrs. Morgan was summoned to the finance office and instructed that as Mr. Morgan was uninsured, she would have to make immediate arrangements with a finance company to pay for Mr. Morgan's treatment.  Mrs. Morgan replied that although she did not know what method Mr. Morgan would use to pay the medical expenses, the Hospital would be paid.

6. The Hospital, acting through the treating physician, Dr. Linda Haigh, knew of the extent and emergency nature of Mr. Morgan's medical conditions including compression fractures of his thoracic vertebrae.  Nevertheless, Dr. Haigh indicated to Mr. and Mrs. Morgan on Saturday, August 23, 2003 that she planned to discharge Mr. Morgan the following day, Sunday August 24, 2003.  Mrs. Morgan objected to the proposed discharge, citing her husband's intense back pain, his inability to walk and the known pulmonary contusions and blood in his lungs.

7. Mr. Morgan continued to suffer increasingly debilitating back pain, causing him to scream and yell when the Hospital, its employees and/or agents attempted to move him in his bed to an upright position. Mr. Morgan was completely unable to raise himself from the bed or walk, nor could he urinate regularly without the aid of a catheter.

8. On Wednesday, August 27, 2003, the Hospital, acting through the treating physician, Dr. Linda Haigh, again stated to Mr. and Mrs. Morgan that Mr. Morgan was ready to be discharged from the hospital and ordered his discharge for the following morning. Dr. Haigh stated that Mr. Morgan would receive sufficient pain medication to make the trip to his home in Foley. Mrs. Morgan again objected to Mr. Morgan's discharge and demanded that the Hospital provide treatment for his back. Although the Hospital eventually agreed to provide an epidural, Mr. Morgan's discharge was still planned for the following day.

9. According to the Hospital's medical records, Mr. Morgan's discharge was cancelled and an MRI was ordered to evaluate his back on Saturday, August 30, 2003. However, the necessity of an MRI was never discussed with Mr. or Mrs. Morgan. The Hospital knew of the need for an MRI scan to evaluate the injuries to Mr. Morgan's back, but failed to provide this appropriate medical screening.

10. On Sunday, August 31, 2003, the Hospital discharged Mr. Morgan and delivered him to his home in Foley, Alabama via an ambulance owned and/or controlled by the Hospital. At the time of his discharge, Mr. Morgan continued to suffer from untreated compression fractures of his vertebrae, was unable to sit up or walk, was in a condition of immense pain and suffering due to his injuries, was unable to regularly

discharge urine without the aid of a catheter, required acute medical treatment and was otherwise medically unstable as his condition was likely to rapidly deteriorate after his discharge.  Mrs. Morgan was completely unable to provide the degree of care that her husband required.

11. Mr. Morgan arrived at his home in Foley, Alabama at approximately 4:30 p.m. in the Hospital's ambulance and was carried in to his bed on a stretcher by the ambulance attendants.

12. Thomas Henry Morgan, Sr. died at home in the early morning hours of Monday, September 1, 2003 as a result of his medical condition resulting from his fall, and for which he previously sought treatment at the Hospital.

13. An autopsy report conducted by the Alabama Department of Forensic Sciences on September 1, 2003 indicated that Mr. Morgan suffered from displaced fractures of the 10th and 11th thoracic vertebrae with the underlying thoracic spinal cord partially transected and surrounded by epidural and subdural hemmorages, multiple displaced right rib fractures, laceration of his right kidney, and saddle pulmonary thromboembolism.

14. Previous evidence of medical intervention by the Hospital was noted by the medical examiner as Mr. Morgan's body had a Hospital identification band on the left wrist with the notation "Morgan, Tommy, MR 00588557; Haigh, Linda", and on the right wrist a Hospital identification band with the notation "NORTH MISSISSIPPI MEDICAL CENTER; U1095; MORGAN, TOMMY".

## COUNT ONE

## VIOLATION OF ANTI-DUMPING STATUTE

15. The Plaintiff adopts and realleges paragraphs 1 through 14 above as if fully set forth herein.

16. The Hospital, acting through its employees, apparent employees, agents, or contractors, determined that Thomas H. Morgan, Sr. had an emergency medical condition when he presented to the Hospital.

17. The Hospital, acting through its employees, apparent employees, agents, or contractors, failed to provide appropriate medical screening on August 30, 2003 by failing to obtain an MRI scan of Mr. Morgan's back which was within the capability of the Hospital to determine that an emergency medical condition existed in the thoracic region of his spine.

18. The Hospital, acting through its employees, apparent employees, agents, or contractors failed to provide the medical treatment necessary to stabilize Mr. Morgan, and, further, discharged him in an unstable medical condition.

19. The Hospital's inactions and actions violated 42 U.S.C § 1395dd, et seq.

20. As a proximate result of the Hospital's failure to appropriately screen, examine and treat Mr. Morgan, and the Hospital's subsequent discharge of Mr. Morgan in a medically unstable condition, Mr. Morgan's condition rapidly deteriorated resulting in his death.

WHEREFORE, the premises considered, Plaintiff, as Personal Representative of the Estate of Thomas H. Morgan, Sr., deceased, demands judgment for compensatory and punitive damages against the Hospital, and for such further relief as permitted by law.

## COUNT TWO

## OUTRAGE

21. Mrs. Morgan, in her individual capacity, adopts and realleges paragraphs 1 through 20 above as if fully set forth herein.

22. The Hospital's conduct described herein which constituted a violation of 42 U.S.C §1395dd, et seq. was intentional and/or reckless and was so extreme as to go beyond all possible bounds of decency and should be regarded as intolerable in our society.

23. As a proximate result of the Hospital's outrageous conduct in the care of Mr. Morgan, Mrs. Morgan was caused to suffer severe emotional distress that no reasonable person could or should be expected to endure.

WHEREFORE, the premises considered, Plaintiff, individually, demands judgment for compensatory and punitive damages against the Hospital, and for such further relief as permitted by law.

Respectfully submitted,

s/ Brenda L. Morgan
BRENDA L. MORGAN
Individually and as Personal Representative
of the Estate of Thomas H. Morgan, Sr., deceased

MARK D. RYAN, P.C.

s/ Mark D. Ryan
MARK D. RYAN (RYANM9774)
Attorney for Brenda L. Morgan
Post Office Box 1000
Bay Minette, Alabama  36507
mdrcourt@mryanlaw.com (for court notices only)
(251) 580-0500

STATE OF ALABAMA

COUNTY OF BALDWIN

      Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared, BRENDA L. MORGAN, individually and as Personal Representative of the Estate of Thomas H. Morgan, Sr., deceased, who is known to me, and who after being by me both duly and legally sworn, deposed and stated that the facts and matters alleged in the foregoing Complaint are true and correct to the best of her knowledge, information and belief.

                                           /s Brenda L. Morgan
                                           BRENDA L. MORGAN

Sworn to and subscribed before me on this the 24th day of August, 2005.

                                           /s Melissa A. Watson
                                           NOTARY PUBLIC
                                           My Commission Expires: 4/25/09

## JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

                                           /s/ Mark D. Ryan
                                           MARK D. RYAN

Defendant to be served by certified mail as follows:

NORTH MISSISSIPPI MEDICAL CENTER, INC.
c/o Bruce J. Toppin
830 S. Gloster
Tupelo, Mississippi  38801